UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEF GRAZIANI, | ) | CASE NO. 4:12 CV 647 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| MICHAEL PUGH, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Josef Graziani filed this action under *Bivens*[1] and the Alien Tort Statute ("ATS")(commonly referred to as the Alien Tort Claims Act), 28 U.S.C. 1350, against Northeast Ohio Correctional Center ("NEOCC") Warden Michael Pugh, NEOCC Physician Dr. Ruprecka, NEOCC Physician's Assistant Hall, NEOCC, FCI-Vicorville Physician Dr. Villalon, FCI-Victorville Medical Director Angel Ortiz, and Barstow Orthopedics Physician Dr. Louis Redix. In the Complaint, Plaintiff alleges he did not receive adequate treatment for his shoulder injury. He seeks monetary damages and injunctive relief.

**I.     Background**

---

[1]     *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). While plaintiff cites 42 U.S.C. § 1983, there is no allegation of action under color of state law. Plaintiff is a federal prisoner in the custody of the Bureau of Prisons. *Bivens* provides federal inmates and detainees with a cause of action analogous to § 1983.

Plaintiff alleges he injured his shoulder in a "slip and fall accident" at a pre-trial holding facility in Canada in 2005. He was referred to the Royal Columbian Case Clinic where he received surgery on the shoulder in June 2006. That surgery was followed by intermittent physical therapy. Plaintiff contends his shoulder began "locking up" after the surgery. He was scheduled for a second surgery when he was transferred to FCI-Victorville in California.

At FCI-Victorville, Plaintiff met Dr. Redix from Barstow Community Hospital who treated patients under contract with the prison. Dr. Redix performed the second surgery in October 2009 with the approval of Ms. Ortiz. As a result of this surgery, Plaintiff lost the ability to move his shoulder entirely. He was sent to the Terminal Island Medical Facility for rehabilitation from March 30, 2010 until July 22, 2010, but he showed no improvement in his condition.

Thereafter, Plaintiff was transferred to NEOCC. He claims NEOCC physicians were supposed to provide shoulder manipulation under anesthesia and physical therapy but he has not received these treatments. Plaintiff claims he is an Israeli citizen. He contacted the Israeli consulate who persuaded NEOCC to send Plaintiff to a specialist. The specialist indicated Plaintiff had suffered severe damage to his shoulder and indicated the need for physical therapy three times per week. Plaintiff states he is receiving therapy once per week under the supervision of Dr. Rupeka. Plaintiff asserts claims for cruel and unusual punishment, medical malpractice and negligence, and the Alien Tort Statute ("ATS").

**II.    Analysis**

While *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court may dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if

it lacks an arguable basis in law or fact.[2] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). Generally, where the filing fee has been paid by the Plaintiff at the outset of the case, the district court may not *sua sponte* dismiss a Complaint unless the Court gives the Plaintiff the opportunity to amend the Complaint. *Apple*, 183 F.3d at 479. The district court, however, may dismiss an action *sua sponte* if the Complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(*citing Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). In light of the Supreme Court's decisions in *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70 (2001) and *Minneci v. Pollard*, 565 U. S. ____ , 2012 WL 43511 at* 10, slip op. (U.S. Jan. 10, 2012), this Court lacks jurisdiction to consider Plaintiff's Eighth and Fourteenth Amendment claims against the NEOCC Defendants. The Court further finds that Plaintiff's claims under the Alien Tort Statute are so devoid of merit that the court lacks jurisdiction to consider them as well.

    A. <u>Alien Tort Statute</u>

The Alien Tort Statute ("ATS"), more commonly known as the Alien Tort Claims Act, was passed by the First Congress in 1789. *See* Judiciary Act of 1789, ch. 20, § 9(b), 1 Stat. 73, 76-77 (codified, as amended, at 28 U.S.C. § 1350 (2000)). In its current form, the ATS provides in its

---

[2] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

entirety: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.

In *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the Supreme Court set forth a framework for determining whether a cause of action falls within the purview of the ATS. After conducting a lengthy historical review, the Court found that at the time the ATS was enacted only three actions were generally recognized as infractions of the law of nations: piracy, offenses against ambassadors, and violations of safe conduct. *Id*. at 724. In addition to these traditional law of nations violations, other causes of actions based upon present-day law of nations may be cognizable under the ATS if the claim "both rest[s] on a norm of international character accepted by the civilized world and [is] defined with a specificity comparable to the features of the [aforementioned] 18th-century paradigms." *Id*. at 725.

The Supreme Court cautioned, however, that while "the door is still ajar [on ATS claims, these claims are]... subject to vigilant door-keeping, and thus open to a narrow class of international norms today." *Id*. at 729. The Sixth Circuit has explained that while "the ATS holds great potential to bring justice to certain serious violations of human, civil, and environmental rights in a federal forum," that statute, "by no means, supplies jurisdiction over every wrong committed against an alien." *Taveras v. Taveraz*, 477 F.3d 767, 771 (6th Cir. 2007).

In the instant case, Plaintiff does not provide any basis for his claim under the ATS. He does not identify a "treaty of the United States" with any potential application to the instant case. As set forth above, the three original laws of nations identified in the 18th century were piracy, offenses against ambassadors, and violations of safe conduct. *Sosa*, 542 U.S. at 724. There are

no allegations in the Complaint suggesting a violation of any of these original laws of nations. Specifically, there is no indication of an act of robbery or depradation committed upon the high seas, which is a fundamental element of the offense of piracy. *Taveras*, 477 F.3d at 772, fn 2. Further, there are no allegations of any kind regarding any potential offenses against an ambassador. Finally, with regard to the violation of safe conduct, the Sixth Circuit has explained that "a violation of safe conduct occurs when an alien's privilege to pass safely within and through the host nation is infringed and the alien consequently suffers injury to their 'person or property.'" *Id.* at 773 (quoting 4 William Blackstone, Commentaries on the Laws of England, at 68-69 (1769)). Even liberally construed, there are no allegations in the Complaint suggesting Defendants violated Plaintiff's right to safe conduct under the laws of nations.

It is possible Plaintiff is attempting to argue that another cause of action based upon "present-day law of nations," as suggested in *Sosa*, *supra*. To fall within this provision of the ATS, however, the alleged tortious conduct must violate "well-established universally recognized norms of international law." *Taveras*, 477 F.3d at 776. Plaintiff's Complaint is based upon what appears to be medical malpractice, not a violation of international law. Plaintiff's claims under the ATS are dismissed.

### B. *Bivens* Claims Against NEOCC Defendants

*Bivens* provides a limited cause of action against individual federal government officers acting under color of federal law alleged to have acted unconstitutionally. *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70 (2001). *Bivens*' purpose is to deter individual federal officers, not the agency, from committing constitutional violations. A *Bivens* action therefore cannot be brought against an entity such as the federal prison, the Bureau of Prisons, or the United

States Government. *Id*.

CCA, which owns and operates NEOCC, is a private corporation. To avoid imposing asymmetrical liability costs on private prison facilities, the Supreme Court declined to expand *Bivens* to provide this cause of action against a private prison corporation. *Id*. at 70-74. (pointing out that when a prisoner in a Bureau of Prisons facility alleges a constitutional deprivation, his only remedy lies against the offending individual officer). Plaintiff therefore cannot bring *Bivens* claims against CCA or NEOCC.

The Supreme Court further declined to extend *Bivens* to the employees of a private prison under certain circumstances. *Minneci v. Pollard*, 565 U. S. \_\_\_\_ , 2012 WL 43511 at* 10, slip op. (U.S. Jan. 10, 2012). "A federal prisoner seeking damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving negligent exposure to infectious disease which is at issue here), must seek a remedy under state tort law." *Id*. A *Bivens* remedy cannot be implied.

Here, Plaintiff asserts claims under the Eighth and Fourteenth Amendments. Plaintiff's Eighth Amendment claims against Warden Michael Pugh, Dr. Ruprecka, and Physician's Assistant Hall, are clearly governed by the Supreme Court's decision in *Minneci*. Plaintiff cannot pursue a cause of action under *Bivens* against these Defendants. Plaintiff does not indicate which claims he is attempting to assert under the Fourteenth Amendment. Based on the allegations in the Complaint, he appears to be asserting a denial of substantive due process based on inadequate medical care. Because this claim would also typically fall within the scope of state tort law, it is

also dismissed in accordance with *Minneci* against Pugh, Rupecka, and Hall.

### C. *Bivens* claims against FCI-Victorville Defendants

Finally, the Northern District of Ohio is not the proper venue for claims brought against FCI-Victorville Physician Dr. Villalon, FCI-Victorville Medical Director Angel Ortiz, and Barstow Orthopedics Physician Dr. Louis Redix. A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b). All of these Defendants reside in the State of California and the events giving rise to the claims against those Defendants occurred in California. The Northern District of Ohio is not the proper venue in which to assert these claims.

## Conclusion

Accordingly, Plaintiff's claims under the Alien Tort Statute, and his *Bivens* claims against NEOCC, Pugh, Ruprecka, and Hall are dismissed. The Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.[3] This Court is not the proper venue in which to bring claims against FCI-Victorville Physician Villalon, Medical Director Angel Ortiz, or Barstow Orthopedics Physician Dr. Louis Redix. Because they are the only Defendants remaining in this action, this case is transferred to the United States District Court

---

[3] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

for the Southern District of California.

    IT IS SO ORDERED.


Date: July 9, 2012                  */s/ John R. Adams*
                                           JOHN R. ADAMS
                                           UNITED STATES DISTRICT JUDGE